CORRECTED

[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-90022

_____

GEORGE RUHLEN,
CRP/CRE PONCE DE LEON OWNER, LLC,
CRP/CRE PORTFOLIO VENTURE, LLC,
CRP/CRE MEMBER, LLC,
J. ALLEN BOBO,
LUTZ, BOBO, & TELFAIR, P.A.,

                                        Petitioners,

*versus*

HOLIDAY HAVEN HOMEOWNERS, INC.,

                                        Respondent.

2                    Order of the Court                    21-90022

_____

Petition for Permission to Appeal from the United States District
Court for the
Middle District of Florida

D.C. Docket No. 6:21-cv-00174-CEM-EJK

_____

Before: ROSENBAUM, NEWSOM, and BRANCH, Circuit Judges.
BY THE COURT:

This case is before us on a petition for permission to appeal. The plaintiffs, a group of current and former mobile homeowners and their homeowners' association, filed this action in Florida state court against numerous defendants, alleging violations of the Florida Antitrust Act and the Americans with Disabilities Act. The plaintiffs framed their suit as a "representative action" filed pursuant to Florida Rule of Civil Procedure 1.222.

The defendants removed the case to the United States District Court for the Middle District of Florida based on the ADA claim and the Class Action Fairness Act. CAFA allows removal of a "class action," which it defines to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1453(b), 1332(d)(1)(B).

In an amended complaint, the plaintiffs omitted their ADA claim and added other state-law claims, including one alleging violations of the Florida Mobile Home Act, Fla. Stat. § 723.001 *et seq.* Under that count, the homeowners' association reiterated that it was authorized to file the action in its "representative capacity under Rule 1.222 of the Florida Rules of Civil Procedure and Section[] 723.075" of the Florida Statutes. The district court then *sua sponte* remanded the case to state court. In so doing, the district court determined that federal-question jurisdiction no longer existed because the amended complaint asserted only state-law claims and that CAFA didn't provide jurisdiction because a claim brought in a representative capacity under Florida Rule of Civil Procedure 1.222 "is not a class action, as that term is understood for CAFA jurisdiction."

The defendants then filed with this Court a petition for permission to appeal. Before deciding whether we should grant the defendants' petition, we must determine whether we have jurisdiction to consider their appeal. We hold that we do not.

As a general rule, we may not review a district court's decision to remand a case based on its determination that it lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(d); *Hunter v. City of Montgomery*, 859 F.3d 1329, 1333 (11th Cir. 2017) (citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976)). As relevant here, however, there is a statutory exception to the general rule that applies where the appeal is "from an order of a district court granting or denying a motion to remand a class

action to the State court from which it was removed." 28 U.S.C. § 1453(c)(1).

While this case may involve a "class action" that was "removed" from a "State court"—that is the crux of the parties' dispute—neither party here ever filed a "motion to remand" the suit to state court. Rather, the district court *sua sponte* remanded the case. Accordingly, we must decide whether the phrase "an order of a district court granting or denying a motion to remand a class action" covers a district court's *sua sponte* remand order.

For better or worse, § 1453(c)(1)'s text is best interpreted not to encompass a district court's decision to remand *sua sponte*. Black's Law Dictionary defines the term "motion" as "[a] written or oral application requesting a court to make a specified ruling or order"—and thus, we think, clearly contemplates party initiation. *Motion*, Black's Law Dictionary (11th ed. 2019). Even though we sometimes say—and indeed, Black's says—that a court acting *sua sponte* does so "on its own motion," *Sua Sponte*, Black's Law Dictionary (11th ed. 2019), that shorthand colloquialism doesn't accurately capture reality; the court in that instance does not actually "request[]" anything of itself, nor does it grant or deny anyone else's request.

Numerous sources corroborate our conclusion that, in ordinary legal parlance, a "motion" is a request or an application *made by a party*. Bouvier's Law Dictionary, for instance, explains—like Black's—that a "motion is presented to a court . . . by one party." *Motion (Movant or Move)*, The Wolters Kluwer Bouvier Law

Dictionary: Desk Edition (Stephen Michael Sheppard ed., 2012).  So too, legal encyclopedias explain that "[t]he term 'motion' generally means an application made to a court or judge to obtain a rule or order directing some act to be done in the applicant's favor in a pending case," 56 Am. Jur. 2d Motions, Rules, and Orders § 1 (2020) (footnotes omitted), that "[t]he term 'motion' generally means an application made to a court or judge for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant in a pending case," 60 C.J.S. Motions and Orders § 1 (2020) (footnotes omitted), and that a "motion is a request for relief, usually interlocutory relief, within a case," *id*.

Accordingly, we find ourselves constrained to conclude (colloquialisms aside) that when a court *sua sponte* orders a remand, it is not "granting" its own "motion" within the meaning of § 1453(c)(1)—any more than it would be "denying" its own motion in the absence of such an order.  For good or ill, the ordinary meaning of the word "motion" refers to a request or an application made by a party; it does not contemplate something a court does on its own.  *In re Wild*, 994 F.3d 1244, 1257 (11th Cir. 2021) (en banc) ("[W]e assume that the legislative purpose is expressed by the ordinary meaning—not the idiosyncratic meaning—of the words used." (quotation marks omitted)).

Our dissenting colleague disagrees because she believes that Congress's "clear intention" in enacting § 1453(c)(1) was to include *sua sponte* remands.  We readily admit the *possibility* that Congress "inten[ded]" § 1453(c)(1) to cover instances in which a district

court *sua sponte* remands a case to state court, as well as those in which the court issues an order "granting or denying a motion to remand." But "[i]t is the *text's* meaning, and not the content of anyone's expectations or intentions, that binds us as law." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 398 (2012) (quoting Laurence H. Tribe, "Comment," *in* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 65, 66 (1997)). Accordingly, when interpreting a statute, our "inquiry both begins and ends with a careful examination of the statute's language." *Wild*, 994 F.3d at 1255. We "must presume that a legislature says in a statute what it means and means in a statute what it says there." *CRI-Leslie, LLC v. Comm'r of Internal Revenue*, 882 F.3d 1026, 1033 (11th Cir. 2018) (quotation marks omitted). We simply aren't at liberty to "plumb a statute's supposed purposes and policies in search of the [legislature's] intent." *Wild*, 944 F.3d at 1255.[1]

The dissent contends that our interpretation of § 1453(c)(1) produces an absurd result. And again, we can agree that omitting

---

[1] We recognize, as our dissenting colleague notes, that at least one of our sister circuits has expressly disagreed with the interpretation of § 1453(c)(1) that we embrace here. In construing that provision to cover *sua sponte* remand orders, the Ninth Circuit asserted that doing otherwise "would be inconsistent with CAFA's clearly expressed intention." *Watkins v. Vital Pharms., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013). But the only expression of intent to which that court pointed was the provision's text. For reasons explained above the line, we simply don't think that § 1453(c)(1)'s plain terms express the intent that the Ninth Circuit assumed.

21-90022                    Order of the Court                    7

*sua sponte* orders from the statute's scope may seem a little (or perhaps more than a little) odd.  But the absurdity bar is a high one, and "'[s]omething that 'may seem odd . . . is not absurd.'" Scalia & Garner, *Reading Law*, at 237 (ellipses in original) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005)).  As Justice Story famously—and graphically—explained, the absurdity exception to the plain-meaning rule governs only where "applying the provision to the case would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application."  1 Joseph Story, *Commentaries on the Constitution of the United States* § 427, at 303 (2d ed. 1858).  We just don't think that this case meets the "monstrous[ness]" threshold.

Because the remand in this case was not ordered upon the motion of any party, § 1453(c)(1)'s exception doesn't apply here.  The result may be an odd one, but it's the one that the statute's plain language requires.  "If Congress thinks that we've misapprehended its true intent—or, more accurately, that the language that it enacted . . . inaccurately reflects its true intent—then it can and should say so by amending" § 1453(c)(1).  *CRI-Leslie*, 882 F.3d at 1033.

Because we lack jurisdiction to review the district court's *sua sponte* remand, the Petition for Permission to Appeal pursuant to the Class Action Fairness Act is **DENIED**.

21-90022                 Rosenbaum, J., Dissenting                      1

ROSENBAUM, Circuit Judge, Dissenting:

I disagree with the majority's conclusion that we lack authority to grant the petition for permission to appeal the district court's sua sponte order remanding the case to state court. Not only can we consider the petition, but this case presents a novel issue in our Circuit that warrants a merits panel's consideration. I therefore respectfully dissent from the denial of the petition for permission to appeal.

The majority concludes that we lack authority to entertain the petition based on its interpretation of 28 U.S.C. § 1453(c)(1), which provides, in relevant part, that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed . . . ." More specifically, the majority finds that "an order of a district court granting or denying a motion to remand a class action" cannot include an order of a district court that sua sponte remands a class action. This hypertechnical reading of CAFA is refuted by the broader view of the common understanding of the statutory language, the clear intention of the statute as revealed by its context, the absurd result of reading the statute as the majority does, and other circuits' understanding of § 1453(c)(1)).

Before I explain why, I must respond to the majority's suggestion in taking the words "clear intention" from my preceding

2                  Rosenbaum, J., Dissenting                21-90022

sentence out of context to suggest that I discern Congress's "clear intention" by relying on something outside the traditional toolbox for construing statutes. I don't. But unlike the majority, I consider the textual language *and* its position within the overall statutory scheme. And that is just as surely a part of statutory interpretation as evaluation of the language. Indeed, "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). The Supreme Court has explained, "oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (cleaned up). And "[o]ur duty, after all, is to construe statutes, not isolated provisions." *King*, 576 U.S. at 486 (cleaned up). So any interpretation of "motion" without consideration of the surrounding text and meaning of the statute is an incomplete one.

With that in mind, I return to the statutory analysis. To start, I note we have never held that a district court's sua sponte remand order in a case removed under CAFA did not fall under the purview of 28 U.S.C. § 1453(c)(1). And our cases reviewing CAFA remand orders have never implied that our review was possible only because the order resulted from a party's filing of a motion. *See, e.g., Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924 (11th Cir. 2019); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir.

21-90022            Rosenbaum, J., Dissenting            3

2014); *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).

Not only that, but we have defined "*sua sponte*" as meaning "[w]ithout prompting or suggestion; *on its own motion.*" *See Velchez v. Carnival Corp.*, 331 F.3d 1207, 1210 (11th Cir. 2003) (emphasis added) (quoting *Black's Law Dictionary* 1437 (7th ed. 1999)). And the Supreme Court has similarly characterized sua sponte decisions by the district court as "on its own motion." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). In other words, it is fair and reasonable to understand a court's sua sponte remand as court's "granting . . . [of] [its own] motion to remand a class action," meaning a sua sponte remand fits within the language of § 1453(c)(1).

Indeed, the circuits that have explicitly or implicitly addressed the issue have all concluded that an order remanding a case removed based on CAFA jurisdiction does not become unreviewable simply because it was remanded sua sponte. As the Ninth Circuit has explained,

> We do not read § 1453(c)(1)'s authorization of an appeal as limited only to district court orders made in response to a party's "motion." Sua sponte orders are, literally, orders issued when the court acts "on its own motion." Moreover, it is well established that district courts may address questions of subject matter jurisdiction sua sponte. If CAFA permitted review

4                    Rosenbaum, J., Dissenting              21-90022

of remand orders issued only in response to a party's motion to remand, district court orders remanding class actions sua sponte would be insulated from appellate review. Such a result would be inconsistent with CAFA's clearly expressed intention that class actions are exempt from the general jurisdictional rule that district court remand orders are not reviewable on appeal.

*Watkins v. Vital Pharms., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013) (footnotes and citations omitted); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 789 (9th Cir. 2018) ("We have jurisdiction to review the district court's *sua sponte* remand order pursuant to 28 U.S.C. § 1453(c)(1)." (citing *Watkins*, 720 F.3d at 1180–81)).

Outside the Ninth Circuit, the Seventh and Eighth Circuits have implicitly held that sua sponte remand orders in cases removed under CAFA are reviewable under § 1453(c)(1). *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (reviewing a sua sponte CAFA remand); *Dalton v. Walgreen Co.*, 721 F.3d 492, 494 (8th Cir. 2013) (same). And in an unpublished decision, the D.C. Circuit acknowledged that a sua sponte remand order was "properly before this court as the remand order falls within section 1453(c)(1)." *In re U-Haul Int'l, Inc.*, No. 08-7122, 2009 WL 902414, at *2 (D.C. Cir. Apr. 6, 2009) (Rogers, J., dissenting from majority's decision to *decline* jurisdiction over appeal). In fact, I have been unable to find any court of appeals decision

holding that sua sponte orders remanding CAFA cases are wholly insulated from appellate review; today, we become the first.

In so doing, we articulate an interpretation of § 1453(c)(1) that undermines what the statutory context of § 1453(c)(1) reflects Congress intended to do. Congress included the "granting or denying a motion to remand" language to ensure that orders dealing with remand in CAFA cases are not subject to the § 1447(d) jurisdictional bar or to the final-judgment rule. An order denying a motion to remand would obviously not qualify as a "final decision" and would therefore ordinarily be unappealable. 28 U.S.C. § 1291. But in CAFA cases, such orders are subject to immediate appellate review. Congress added the language not to exempt sua sponte orders from review, but to subject all orders about remand to immediate appellate jurisdiction.

Had Congress intended to expose only those orders about remand issued in response to a party's filed motion, it easily could have drafted the statute to say that the court of appeals may review orders "granting or denying a **party's** motion to remand." The majority's conclusion that we lack jurisdiction "produce[s] a result demonstrably at odds with the intentions of [the statute's] drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (internal quotation marks omitted).

Even if we assume that the majority's hypertechnical interpretation of the statute is correct, textualism has its limits. And it hits them here. We do not apply a literal reading of the statute

6                    Rosenbaum, J., Dissenting                21-90022

when "the disposition required by the text is . . . absurd." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  But that's what the majority's construction requires:  an absurd result.  If the majority's interpretation of "motion" is correct, then Congress thought it important enough to make a special exception to the final-judgment rule and § 1447(d) appellate bar so orders granting (or denying) a party's motion to remand in a CAFA case may be immediately appealed, but it completely shielded from review of any type exactly the same result when the court remands the CAFA case on its own motion.  I can conceive of no logical reason why the same action should be exposed to two opposite results, depending on whether a party made a motion before the court issued its order.  Nor does the majority offer any convincing reason that Congress would have viewed sua sponte orders as an exception to the rule of immediate appellate review it imposed on remand orders in response to a party's motion.

    That the result is absurd is emphasized even more by Congress's intent as shown in CAFA's legislative history.  To be sure, we consult legislative history, at most, only when a statute is ambiguous.  *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1089 (11th Cir. 2018), *aff'd,* 139 S. Ct. 1507(2019).  And as I've explained, here, the plain meaning of the statute endows us with authority to immediately review a sua sponte order remanding in a CAFA case, so I reference the history only to put a bigger exclamation point on the absurdity of the majority's proposed "plain meaning" of the statute.

21-90022            Rosenbaum, J., Dissenting            7

The Senate Report on the bill that eventually became CAFA included the following explanation of § 1453(c): "The purpose of this provision is to develop a body of appellate law interpreting the legislation without unduly delaying the litigation of class actions." S. Rep. No. 109-14, at 49 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 46. Nowhere in this history is any indication of an intent to differentiate orders that are prompted by a party's motion from orders that are sua sponte. To the contrary, the objective of facilitating speedy review of remands in class actions applies just as strongly to both.

So, in my view, we have the authority to grant the petition here. And I think we should. The petition raises an issue of first impression in our circuit: whether an action brought under Florida Rule of Civil Procedure 1.222 is a "civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action," such that it should be considered a "class action" under CAFA and thus removable to federal court. 28 U.S.C. §§ 1453(b); 1332(d)(1)(B). The Florida Supreme Court adopted Rule 1.222 because "the unique features of mobile home residency call for an effective procedural format for resolving disputes between park owners and residents concerning matters of shared interest." *See Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd.*, 541 So. 2d 1121, 1123 (Fla. 1988). This issue involves an intersection between state and federal law. The development of the law would benefit from this Court's

8                      Rosenbaum, J., Dissenting              21-90022

determination of whether Congress's intent in enacting CAFA was to make cases filed under rules like Florida Rule of Civil Procedure 1.222 subject to removal to federal court.

For these reasons, I respectfully dissent.